# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **LONNELL JOHNSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| | ) | **No. 4:11CV1022 SNLJ** |
| | ) | **(NCC)** |
| **TROY STEELE,** | ) | |
| | ) | |
| **Respondent,** | ) | |

## REPORT AND RECOMMENDARION
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

This matter is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). (Doc. 20). After reviewing the case, the court has determined that Petitioner is not entitled to relief. As a result, the court will recommend that the Petition be dismissed.

## I.
## BACKGROUND

Petitioner was charged, in January 2002, with the Class A felony of robbery in the first degree, in that, on November 17, 2001, in the City of St. Louis, he forcibly stole U.S. currency owned by LaRonda Rhodes, and, in the course of doing so, displayed what appeared to be a deadly weapon (Count 1). He was also charged with armed criminal action with regard to the robbery (Count 2). Petitioner was charged with being a prior offender in that he previously had been convicted of the felony of unlawful use of a weapon – carrying a concealed weapon. (Resp. Ex. D at 10-11).

As stated by the Missouri appellate court, the testimony at Petitioner's trial was as follows:[1]

On November 17, 2001, LaRonda Rhodes ("Rhodes") left the bank with approximately $500 in cash. She placed this money in the armrest compartment of her car and began to drive home. As she was driving, a man in a red Grand Am honked his horn and motioned for her to follow him. She followed him and eventually pulled into a parking lot. The man exited the car, walked over to Rhode's car, and introduced himself as "Lonnell." They agreed to exchange phone numbers and Rhodes opened the armrest compartment to get a pen and paper. While she was writing down her telephone number, Lonnell asked for "all of that." She asked him what he meant by that and he said "all of that," as he was looking at the money sitting in the compartment. Lonnell then said, "Give me all of that" and opened his jacket, showing Rhodes the gun he had in his inner jacket pocket. Rhodes asked Lonnell, "Are you going to rob me?" and then threw $85 out of the car and drove away. Rhodes memorialized Lonnell's license plate number and then called the police. An officer responded to the scene and took down a description of the suspect, along with the license plate number.

Subsequently, Sergeant Edward Kuehner and Officer Samuel Jefferson were riding together in a police car when they saw Johnson walking and pulled up next to him. When Johnson saw the police, he began running. Sergeant Kuehner got out of the police car and chased Johnson on foot, while Officer Jefferson pursued Johnson in the police car. During the chase, Johnson discarded a revolver that was recovered by the police. Johnson was placed in a physical line up and Rhodes identified him as the man who robbed her. At trial, Rhodes also

---

[1] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain, 464 U.S. 114, 120 (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id. (citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

testified the gun that was recovered from Johnson was the same color, size and shape as the gun she saw in Johnson's jacket during the robbery.

(Resp. Ex. G at 2-3).

During cross-examination, Rhodes did not recall telling the 911 operator that $100 had been stolen, and, after an attempt to locate a tape player, defense counsel abandoned the line of inquiry. Rhodes had identified Petitioner in both a photograph line-up and the physical line-up. The State entered as exhibits one picture of each of these line-ups. Petitioner's cousin and two aunts testified at trial and provided alibis for him; they said Petitioner was with them all day on November 17, 2001. An aunt specifically said she braided Petitioner's hair, around 11:00 or 11:30 a.m., and that this took over an hour. Another aunt and Petitioner's cousin said they were with him at 6:00 p.m. for the news. Petitioner did not testify. (Resp. Ex. L at 3).

Petitioner was convicted, as charged, and sentenced to two concurrent terms of twenty years in prison. (Resp. Ex. D at 64-66, 104-106). He filed a direct appeal with the Missouri appellate court. (Resp. Ex. E). The Missouri appellate court found no error and affirmed the judgment against Petitioner. (Resp. Ex. G).

Petitioner then filed a pro se Rule 29.15 Motion. (Resp. Ex. I at 4-32). Counsel was appointed, and filed an Amended Motion. (Id. at 35-78). The motion court denied Petitioner post-conviction relief. (Id. at 85-103). Petitioner appealed the motion court's denial of relief to the Missouri appellate court. (Resp. Ex. J). By decision, dated October 19, 2010, the Missouri appellate court affirmed the motion court's judgment. (Resp. Ex. L).

Petitioner filed a timely § 2254 Petition, in which he makes the following claims for habeas relief:

> **(1)**      The trial court's denying Petitioner's motion for judgment of acquittal at the close of all the evidence was a denial of due process;

**(2)** The trial court's overruling Petitioner's objection to the admission of evidence of Petitioner's flight from the police and of his gun possession charge was a denial of due process;

**(3)** Petitioner was denied the right to due process and affective assistance of counsel in that trial counsel failed to adduce evidence that Petitioner had gold teeth at the time of the robbery;

**(4)** Petitioner was denied the right to due process and affective assistance of counsel because trial counsel failed to call Bront Davis as a witness; and

**(5)** Petitioner was denied the right to due process and affective assistance of counsel because trial counsel failed to introduce the 911 tape to impeach Rhodes.

(Doc. 1).

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. <u>Dretke v. Haley</u>, 541 U.S. 386, 388-89 (2004). In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." <u>Sweet</u>, 125 F.3d at 1152 n.9 (citing <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." <u>Schlup</u>, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Petitioner sufficiently raised the issues which he brings before this court to the Missouri appellate court. Additionally, his § 2254 Petitioner was filed within the limitations period. The court finds, therefore, that Petitioner's § 2254 is properly before this court.

### III.
### MERITS STANDARD

"In the habeas setting, a federal court is bound by the AEDPA[2] to exercise only limited and deferential review of underlying state court decisions." <u>Lomholt v. Iowa</u>, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[2] Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.

Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

## IV.
## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Federal habeas review of an ineffective assistance of counsel claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111 (2009). First, a petitioner must overcome the high bar of Strickland v. Washington, 466 U.S. 668 (1984), by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." Id. at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." Harrington v. Richter, 131 S. Ct. 770, 788 (2011). Both the Strickland standard and the standard set forth in § 2254 are highly deferential. Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788.

# V.
## DISCUSSION

**Ground 1:**

In Ground 1, Petitioner claims that the trial court's denial of his motion for judgment of acquittal at the close of all the evidence was a denial of due process. In support of Ground 1, Petitioner argues that there was no evidence from which a reasonable juror could find, beyond a reasonable doubt, that he threatened the immediate use of physical force or that he displayed or threatened the use of what appeared to be a deadly weapon. He also argues that, even if he stopped Rhodes "to flirt" with her, there was no evidence that he threatened the immediate use of physical force; he did not touch Rhodes. (Doc. 1 at 20). Petitioner also argues there was an insufficient basis for the armed criminal action charge. (Id. at 22-23; Doc. 11 at 2-16).

Upon addressing the issue of Ground 1, the Missouri appellate court first noted that it would view the evidence in the light most favorable to the jury's verdict. The court further held:

> Section 569.020 RSMo 2000, provides that "[a] person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he . . . displays or threatens the use of what appears to be a deadly weapon or dangerous instrument." "Forcibly steals" is defined as using or threatening the immediate use of "physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or the retention thereof immediately after the taking." Section 569.010(1) RSMo 2000. The jury instruction on robbery in the first degree count instructed the jury to find Johnson guilty if he "threatened the immediate use of physical force on or against LaRonda Rhodes for the purpose of forcing LaRonda Rhodes to deliver up the [money]," and that in the course of doing so, he "displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument."
>
> Here, there was sufficient evidence presented that Johnson threatened Rhodes with the immediate use of physical force. He displayed a gun to Rhodes while telling her to give him her money. Rhodes testified Johnson said "Give me all of that" and then "flashed" his gun. It was reasonable for a jury to infer from Johnson's conduct that he was threatening Rhodes with the use of his gun to get her to give him the money. See Patterson v. State, 110 S.W.3d 896, 904 (Mo. App. W.D. 2003) ("The requisite threat of physical force may be implied from the fact that the defendant displayed a weapon, engaged in behavior that gave the

appearance that he was armed or use[] of [certain] phrases . . . ."); [other citation omitted].

There was also sufficient evidence presented at trial to show Johnson displayed or threatened the use of what appeared to be a deadly weapon. Rhodes testified at trial Johnson opened his jacket to show her what appeared to be the handle of a gun. Rhodes also testified the gun the police retrieved during their pursuit of Johnson was consistent with the gun Johnson flashed during the robbery. See State v. McCracken, 829 S.W.2d 634, 635-36 (Mo. App. W.D. 1992).

Finally, Johnson argues in this point that because he never used the gun, the evidence was insufficient to support the armed criminal action count. As already discussed above, however, Johnson displayed his gun in such a way as to threaten the use of it. See State v. Williams, 126 S.W.3d 377, 384 (Mo. Banc 2004) (finding the use of a gun to commit a crime can be charged as armed criminal action). Because the evidence was sufficient to support Johnson's conviction of robbery in the first degree, and the evidence further indicated Johnson used a gun in order to commit the robbery, the evidence is also sufficient to support his conviction for armed criminal action.

(Resp. Ex. G at 3-4).

First, to the extent the Missouri appellate court relied on its interpretation of State law, upon its finding without merit the claim raised in Petitioner's Ground 1, on habeas review, this court must defer to the State court on the interpretation of State law. See Schleeper v. Groose, 36 F.3d 737, 737 (8th Cir. 1994) (federal habeas court is not authorized to re-examine state court's determination of state law). Cf. Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition).

Second, the United States Supreme Court stated, in Wright v. West, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether,

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 283-84 (1992) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). <u>See also</u> <u>Scott v. Jones</u>, 915 F.2d 1188, 1190 (8th Cir. 1990); <u>Haymon v. Higgins</u>, 846 F.2d 1145, 1146 (8th Cir. 1988). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319. <u>See also</u> <u>Whitehead v. Dormire</u>, 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); <u>Weston v. Dormire</u>, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing <u>Jackson</u>, 443 U.S. at 319, 321, 324; <u>Loeblein v. Dormire</u>, 229 F.3d 724, 726 (8th Cir. 2000)).

On reviewing the issue of Ground 1, as suggested by Respondent, the Missouri appellate court considered the standard articulated by the Supreme Court in <u>Jackson</u>, 443 U.S. at 319, 321, 324, and applied it to the facts of Petitioner's case. As such, the court finds, to the extent Ground 1 is cognizable pursuant to federal habeas review, that the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable interpretation of federal law. Additionally, the court reasonably applied federal law to the facts of Petitioner's case. <u>See</u> <u>Williams</u>, 529 U.S. at 407-408, 413.

**Ground 2:**

In Ground 2 Petitioner claims the trial court's overruling Petitioner's objection to the admission of evidence of Petitioner's flight from the police and evidence of his gun possession charge was a denial of due process. In support of Ground 2, Petitioner argues that the admission of such evidence violated his right to be tried only for the crime for which he was being charged. Petitioner contends the trial court erred in denying his trial counsel's motion in limine regarding these matters. (Doc. 1 at 24-25; Doc. 11 at 16-29).

Upon finding the claim of Petitioner's Ground 2 without merit, the Missouri appellate court held:

> Johnson argues the trial court erred in overruling his objection and admitting into evidence his flight from the police officers and his discarding of a gun during the chase because admission of such evidence was more prejudicial than probative.
>
> The trial court had broad discretion in determining whether to admit or exclude evidence at trial. State v. Williams, 97 S.W.3d 462, 468 (Mo. Banc 2003). . . . We only review for an abuse of discretion. Id. "Evidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." State v. Bernard, 849 S.W.2d 10, 13 (Mo. Banc 1993) (internal citations omitted).
>
> Here, the evidence that Johnson discarded a gun when running from the police was relevant to establish his guilt of the crimes he was charged with, and the probative value of this evidence outweighed any possible prejudice as a result. The evidence regarding Johnson's flight from the police and the fact that he tried to dispose of the gun was also relevant in that it tended to show his consciousness of guilt. See State v. Rodden, 728 S.W.2d 212, 219 (Mo. Banc 1987).

(Resp. Ex. G at 4-5).

First, because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas

petition.  <u>Scott v. Jones</u>, 915 F.2d 1188, 1190-91 (8th Cir. 1990).  Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." <u>Evans v. Luebbers</u>, 371 F.3d 438, 443 (8th Cir. 2004).  To implicate a due process violation, the alleged improper evidence must be "so egregious that [it] fatally infected the proceedings and rendered [the] entire trial fundamentally unfair."  <u>Anderson v. Goeke</u>, 44 F.3d 675, 679 (8th Cir. 1995).

Second, under federal law, evidence of flight is admissible "to show consciousness of guilt if there is a sufficient basis in the evidence to warrant the inference that the flight 'was prompted by considerations related to the issue in question.'"  <u>United States v. Roy</u>, 843 F.2d 305, 310 (8th Cir. 1988) (quoting <u>United States v. Peltier</u>, 585 F.2d 314, 323 (8th Cir. 1978)).

In Petitioner's case, as explained by the Missouri appellate court, there was a connection between the evidence Petitioner suggests should have been excluded and the crimes for which he was being charged; his running from the police was relevant to establish his guilt and his disposing of the gun was relevant to establish his consciousness of guilt.  As such, to the extent Ground 2 is cognizable pursuant to federal habeas review, the court finds that the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable interpretation of federal law.  Additionally, the court reasonably applied federal law to the facts of Petitioner's case.  <u>See</u> <u>Williams</u>, 529 U.S. at 407-408, 413; <u>Roy</u>, 843 F.2d at 310.

**Grounds 3 and 5:**

In Ground 3, Petitioner claims he was denied the right to due process and effective assistance of counsel in that trial counsel failed to adduce evidence that Petitioner had gold teeth at the time of the robbery.  In support of Ground 3, Petitioner argues counsel was ineffective for

failing to call witnesses who could have testified Petitioner had gold teeth. He further states that, at trial, Rhodes described her assailant as having "pretty teeth" and a "nice smile," and that she did mention that her assailant had gold teeth; his trial counsel "attempted to highlight this to the jury" in closing argument; but, when counsel did so, the prosecutor objected and the court sustained the objection. (Doc. 1 at 30-31; Doc. 11 at 29-34).

In Ground 5, Petitioner claims he was denied due process and ineffective assistance of counsel because counsel failed to introduce the 911 tape to impeach Rhodes' testimony. Petitioner argues that introduction of the tape would have shown the discrepancy between Rhodes's testimony at trial regarding the amount of money he took from her and what she reported in the 911 call. (Doc. 1 at 38); Doc. 11 at 38-42).

As stated by the Missouri appellate court upon declining to find merit in the issues raised by Petitioner in Grounds 3 and 5:

> During closing arguments, defense counsel attacked Rhodes's memory of [Petitioner], stating, "She tells you that the person that robbed her was well-dressed, that he had nice teeth, a good smile. You didn't hear anything about the gold teeth that [Petitioner] has. But she focused on his smile." The State objected that whether [Petitioner] had gold teeth was not in evidence, and the trial court sustained the objection. However, during its closing statement, the State point to [Petitioner] as the man Rhodes had identified as her robber, stating, "it was the guy that introduced himself as Lonnell, Lonnell who grins at you from the chair showing you his gold teeth. Two pictures of him. Do you see gold teeth here? You can look at these exhibits and take and request them in the jury room."

(Resp. Ex. L at 3).

As further stated by the Missouri appellate court:

> At an October 2009 evidentiary hearing on the Amended Motion, [Petitioner's] trial counsel testified to the following. First, she recalled believing either that [Petitioner's] gold teeth were removable rather than permanent, or that there was a question of whether the gold teeth had been applied after the robbery. In either case, she would not have presented potentially false evidence to the court. Further, Rhodes's statement that [Petitioner] had a nice smile was not necessarily inconsistent with his having gold teeth. . . . Third, trial counsel

decided not to play the 911 tape to the jury, because she did not want to remind the jury that on the 911 tape Rhodes gave the robber's name as Lonnell.

[Petitioner] testified to the following. Before the trial, he told his trial counsel that he wanted her to address Rhodes's inaccurate description of his gold teeth, and he had shown trial counsel a picture showing him with gold teeth during the summer of 2000. Rhodes had testified during her deposition that the robber had one gold tooth with an open face (where the tooth is outline in gold with the center tooth area showing), while [Petitioner] had two gold caps. Further, he requested that his trial counsel address the 911 tape's disparity regarding the amount of money stolen.

Davis testified that he was [Petitioner's] cousin, and that he had told the trial court he would prefer not to testify at trial; if he had testified at trial, his testimony would have been that he was with [Petitioner] all day. He further testified that [Petitioner's] gold teeth were permanent, but that he did not recall telling trial counsel this. [Petitioner's] cousin and two aunts, who testified at trial, testified that they told trial counsel that [Petitioner] received his gold teeth in 1997 as an 8th-grade graduation present, as per family tradition.

(Resp. Ex. L at 4-5).

Upon finding Petitioner's claims without merit, the Missouri appellate court first considered, as articulated in <u>Strickland</u>, 466 U.S. at 687-92, that to establish ineffective assistance of counsel, Petitioner was required to establish both that his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and that his counsel's deficient performance prejudiced him. The court further noted that Petitioner claimed, on appeal, that counsel's failure to introduce and impeach Rhodes with testimonial evidence regarding his gold teeth and physical evidence (the 911 tape) was not reasonable trial strategy. The court then held:

The mere failure to impeach a witness generally does not entitle a movant to post-conviction relief. <u>Wren v. State</u>, 313, S.W.3d 211, 219 (Mo. App. E.D. 2010). The decision to impeach is considered a matter of trial strategy, and the movant bears the burden of proving the impeachment would have established a defense or changed the outcome of the trial. <u>Id.</u> Here, [Petitioner] failed to establish that any of the three witnesses or the 911 tape would have compellingly impeached Rhodes's testimony. <u>Ferguson v. State</u>, __ S.W.3d __, 2010 WL 2294715, at *12 (Mo. App. W.D. August 31, 2010).

Regarding [Petitioner's] gold teeth, their existence was already before the jury through his physical presence, the parties' closing remarks, and the line-up photographs. Thus, [Petitioner] failed to demonstrate that the three witnesses' testimony about his gold teeth would have produced a viable defense. Id. at *13. Further, the witnesses' testimony would not have compellingly impeached Rhodes's identification of [Petitioner] as the robber. Her description of the robber's "nice teeth" and "good simile" does not inherently preclude the possibility of them being gold. Id. at *12.

Even assuming that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, any deficiencies did not prejudice [Petitioner]. Anderson, 196 S.W.3d at 33. Rhodes positively identified [Petitioner] in a photograph and physical line-up, and specifically noted his fresh braids, which was consistent with the testimony of [Petitioner's] alibi witnesses. Because she and [Petitioner] engaged in a conversation immediately prior to the robbery, she had ample opportunity to observe his appearance.

Regarding the 911 tape, it is a reasonable strategy to decline to impeach a witness with certain evidence if it will prevent other, adverse evidence from being admitted. Storey v. State, 175 S.W.3d 116, 127-28 (Mo. Banc 2005). Here, trial counsel reasonably believed that admitting the 911 tape would hinder rather than help the defense. The 911 tape included Rhodes's statement that the robber stole $100 rather than $85, but it also included her statement that the robber gave his name as "Lonnell." Further, the impeachment would not have provided [Petitioner] with a defense or changed the result of the trial. The difference in the amounts alleged was negligible, and the amount of money was not an element of the crime. Section 569.020.1(2) ("[a] person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he . . . is armed with a deadly weapon"). We find no reasonable probability that admission of this evidence would have changed the outcome of the trial. Wren, 313 S.W.3d at 219.

(Resp. Ex. L at 6-8).

As suggested by Respondent, relevant to both Ground 3 and 5 is federal law applicable to whether counsel was ineffective for failing to follow a particular trial strategy. As to Petitioner's gold teeth and the 911 tape, counsel testified that she considered both matters, specifically investigating whether Petitioner had gold teeth, and deciding at trial not to pursue the 911 tape given that it had implicated Petitioner's guilt.

The United States Supreme Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

[P]resenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, <u>e.g.</u>, ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

Indeed, counsel must exercise reasonable diligence to produce exculpatory evidence. <u>See Kenley</u>, 937 F.2d 1304, 1298 (8th Cir. 1991). Additionally, the decision whether to call witnesses, cross examine witnesses, or introduce evidence may be a matter of trial strategy. <u>See Hall v. Lubbers</u>, 296 F.3d 685, 694 (8th Cir. 2002); <u>Battle v. Delo</u>, 19 F3d 1547,1556 (8th Cir. 1994). "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." <u>Id.</u> at 1556 (citation omitted).

The Eighth Circuit held in <u>Marcrum v. Lubbers</u>, 509 F.3d 589, 502-505 (8th Cir. 2007):

The Supreme Court has held in several cases that the habeas court's commission is not to invent strategic reasons or accept any strategy counsel could

have followed, without regard to what actually happened; when a petitioner shows that counsel's actions actually resulted from inattention or neglect, rather than reasoned judgment, the petitioner has rebutted the presumption of strategy, even if the government offers a possible strategic reason that could have, but did not, prompt counsel's course of action. Rompilla v. Beard, 545 U.S. 374, 395-96, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (O'Connor, J., concurring); Wiggins v. Smith, 539 U.S. 510, 526-27, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Kimmelman, 477 U.S. at 385.

Thus, it is not relevant, pursuant to federal habeas review, whether counsel made a wrong decision when deciding not to pursue whether Petitioner had gold teeth and to introduce the 911 tape. The only issue is whether, under the circumstances of the case, counsel's chosen strategies were reasonable.

Further, the Missouri appellate court determined that evidence regarding whether or not Petitioner had gold teeth was already before the jury. Thus, even if counsel did not demonstrate customary skill and diligence in failing to pursue this, Petitioner could not demonstrate resulting prejudice. See Strickland, 466 U.S. at 687, 697 (requiring both unreasonable performance and prejudice to establish ineffective-assistance). Likewise, because the amount which Petitioner took from Rhodes was not an element of the crime of robbery in the first degree, Petitioner could not demonstrate prejudice resulting from counsel's failure to establish the inconsistency between Rhode's telling the 911 operator that Petitioner robbed her of $100 and her subsequently testifying that he robbed her of $85. See id. The court finds, therefore, that the decision of the Missouri appellate court regarding the issues of Petitioner's Grounds 3 and 5 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, upon finding Petitioner's claims without merit, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Williams, 529 U.S. at 407-408, 413; Marcrum, 509 F.3d at 502-505.

**Ground 4:**

In Ground 4, Petitioner claims he was denied the right to due process and effective assistance of counsel because trial counsel failed to call Bront Davis as a witness. In support of Ground 4, Petitioner argues that Davis was a "material witness" and "would have testified as an alibi witness for [him]." Petitioner acknowledges that Davis' testimony "would have been similar to the testimony provided" by other alibi witnesses whom counsel called, Petitioner argues that counsel mentioned in opening statement that that the jury would hear from Davis; in closing, the State argued that all of Petitioner's alibi witnesses were lying; Davis would have been credible; and, therefore, Davis' testimony would have made a difference. (Doc. 1 at 35-36; Doc. 11 at 35-36). Petitioner further states that, at the post-conviction relief hearing, counsel testified that, prior to deciding not to call Davis, she spoke with him; she believed there were inconsistencies between Davis' potential testimony and that of the other three witnesses; she believed Davis's nervous about warrants outstanding for his arrest might come across when he testified; and this would "lower his credibility." Davis, who was Petitioner's cousin, testified at the post-conviction hearing, that he remembered speaking with Petitioner's counsel, and that he was with Petitioner on November 17, from the time they both awoke before 9:00 a.m., and that he was with Petitioner while he was with one of the other alibi witnesses. (Doc. 11 at 37).

Upon addressing Petitioner's Ground 4, the Missouri appellate court first noted:

> At an October 2009 evidentiary hearing on the Amended Motion, [Petitioner's] trial counsel testified to the following. . . . [T]rial counsel decided not to call Davis as a fourth alibi witness, because his testimony would have been substantially similar to the other three alibi witnesses, but had minor inconsistencies that would have opened him up to attack on cross-examination. Further, Davis had a warrant out for his arrest at the time of the trial, and was afraid to appear at the courthouse for fear of arrest.

(Resp. Ex. L at 4).

The Missouri appellate court then held:

> To prevail on a claim for ineffective assistance of counsel for failing to call a witness, a movant must show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense. Williams v. State, 168 S.W.3d 433, 441 (Mo. Banc 2005). The decision to call a witness and to present evidence are matters of trial strategy, and are "virtually unchallengeable" in an ineffective assistance claim. Id. at 443.

> [Petitioner] argues that Davis would have presented a viable defense to [Petitioner]. [Petitioner] asserts that Davis's testimony, while similar to his other witnesses' testimony, was essential because the State implied that the other three witnesses were lying to protect their family. [Petitioner] has failed to demonstrate that trial counsel's decision not to call Davis was not part of a reasonable trial strategy. Davis is [Petitioner's] cousin and would have been subject to the same implication of bias as the other witnesses. Davis's testimony was essentially the same as the other witnesses', plus it contained inconsistencies that would have opened him to attack or impeachment. Goodwin v. State, 191 S.W.3d 20, 38 (Mo. Banc 2006) (trial counsel not ineffective for failing to present cumulative evidence); [other citation omitted]. Trial counsel's deliberate and logical decision not to present Davis to the jury was a matter of reasonable trial strategy, and does not support a finding of ineffective assistance of counsel. Even though trial counsel's reasoning was, in hindsight, unsuccessful, we will not deem her ineffective. Clayton v. State, 63 S.W.3d 201, 206 (Mo. Banc 2001) ("[r]easonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance.").

(Resp. Ex. L at 8-9),

The court has set forth above federal law applicable to whether counsel is ineffective based on strategic choices she makes, including whether or not to call a witness. Particularly, decisions relating to witness selection are matters of trial strategy, and normally are left to counsel's judgment; this judgment will not be second-guessed by hindsight. Strickland, 466 U.S. at 590; Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001). Even when a potential witness' testimony might have been helpful, to establish grounds for habeas relief, a petitioner must demonstrate that counsel's choice fell outside of the wide range of strategic choices afforded counsel. Id. In Petitioner's case, counsel articulated good reason for choosing not to call Davis,

including that his testimony would have been cumulative. The Eighth Circuit specifically holds that "failing to present cumulative evidence is not ineffective assistance of counsel." Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006) (internal citation omitted). Further, given the outstanding warrants, Davis may not have been the best witness. See id. at 1033-34 (decision not to call defendant's friend because of his criminal history not ineffective assistance).

Consistent with federal law, the Missouri appellate court first considered that counsel's decision not to call Davis was a matter of reasonable trial strategy; Davis would have been subject to impeachment; and the decision not to call him was a matter of sound trial strategy. See Strickland, 466 U.S. at 590; Winfield, 460 F.3d at 1033-34; Hanes, 240 F.3d at 698. The court finds, therefore, that the decision of the Missouri appellate court regarding the issues of Petitioner's Grounds 3 and 5 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, upon finding Petitioner's claims without merit, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Williams, 529 U.S. at 407-408, 413.

## VI.
## CONCLUSION

The court finds that the issues raised by Petitioner in his § 2254 Petition are without merit and that the § 2254 Petition should be dismissed. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability or in forma pauperis on appeal. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the § 2254 Petition filed by Petitioner be **DISMISSED**, with prejudice. Doc. 1

**IT IS FURTHER RECOMMENDED** that for the reasons stated here, any motion by Petitioner for a certificate of appealability and for in forma pauperis on appeal be **DENIED**.

The parties are advised that Petitioner has fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Dated this 25th day of August, 2014.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE